UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 3:22-CR-066-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| RONALD R. TYLER, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Ronald Tyler is charged with six counts of deprivation of rights under color of law for the sexual assaults of four women, and with one count of obstruction of justice for making false or misleading statements to law enforcement. *See generally* [R. 1 ("Indictment")]. On October 21, 2022, the United States filed its notice of intent to introduce evidence of other sexual assaults pursuant to Federal Rule of Evidence 413 and other bad acts pursuant to Rule 404(b). [R. 22]. Defendant filed an objection [R. 23], and the United States replied [R. 24]. The Court heard oral argument on the matter on December 15, 2022. *See* [R. 25]. The Court ordered supplemental briefing and oral argument on January 27, 2023. [R. 26]. On request from Defendant [R. 27], the Court extended the supplemental briefing deadline [R. 28]; [R. 29]. The Court heard oral argument again on February 15, 2023 [R. 32], and the matter now stands submitted.

For the reasons that follow, the United States may introduce testimony from A.J. and S.K. as evidence of prior sexual assaults under Federal Rule of Evidence 413. The United States may not, however, introduce testimony from L.M., A.G.P., J.C., or E.M. as prior bad acts under Rule 404(b). The Court reserves ruling on whether the United States may introduce *res gestae* testimony

1

from investigators concerning L.M. and J.C. until closer to trial, when the Court will have better context to make this determination should the government renew its request.[1]

## I.      Background

Defendant Ronald Tyler worked as a probation and parole officer for the Kentucky Department of Corrections from April 2016 until his dismissal in 2019. [R. 22, pp. 1, 2]; [R. 23, p. 2]. In 2017 and 2018, Defendant supervised probationers S.L., A.P., B.P., and B.B. [R. 22, p. 2]. On July 19, 2022, a federal grand jury returned a seven-count Indictment charging Defendant with crimes related to the sexual assaults of those four probationers, including making false or misleading statements to law enforcement during the investigation of the alleged assaults. [R. 1]. A summary of the United States' allegations concerning S.L., A.P., B.P., and B.B. follows.

### A.  Charged Crimes

#### i.      S.L.

S.L. began reporting to Defendant in June of 2017 when she was placed on parole for a drug violation. [R. 22, p. 4]. According to the United States, Defendant began behaving inappropriately, commenting on S.L.'s appearance and "behaving in a flirtatious manner," during their first meeting. *Id.* Soon after, Defendant allegedly came to S.L.'s place of employment, a gas station with a café area, "and loitered on the premises over an hour." *Id.* Defendant apparently made a habit of this, coming to the gas station café daily and setting up a remote workstation. *Id.* S.L. claims she overheard phone calls where Defendant "admonished other probationers, telling them that if they did not listen to him or do what he told them to do, he would 'violate' them and send them to jail." *Id.*

---

[1] During the second hearing held February 15, 2023, the United States indicated that even if the Court allowed all the proffered Rule 413 and Rule 404(b) witnesses, the United States would likely decide on its own not to call some of them at trial. The United States also noted that it may be difficult to ensure some or all of the witnesses would be available or willing to testify at a trial in this matter. The United States may, therefore, renew its request to introduce testimony from J.C. and L.M. as *res gestae* closer to trial.

Eventually, Defendant instructed S.L. to meet him at a parking lot behind a motel to arrange community service hours. *Id.* When S.L. arrived at the parking lot, Defendant directed her get in his truck. *Id.* S.L. claims Defendant then confessed his feelings for her and told S.L. they "were going to help each other." *Id.* Defendant then kissed S.L., touched her breasts and vagina over her clothing, and pulled his penis out of his pants. *Id.* S.L. performed oral sex on Defendant, believing that if she refused, Defendant would revoke her probation or physically harm her. *Id.*

Sometime after this incident, Defendant directed S.L. to meet him at a hotel. *Id.* at 5. S.L. was afraid that if she did not, Defendant would retaliate by altering her drug test results and revoking her probation. *Id.* This fear stemmed from an incident where S.L. reported for and passed a drug test, but Defendant informed her that he had already updated her file to reflect a passing test before she ever took it. *Id.* In August of 2017, S.L. met Defendant at a hotel, per his instruction. *Id.* S.L. alleges that when she arrived, Defendant was naked. *Id.* S.L. tried to leave, but Defendant began "aggressively" removing her clothes. *Id.* While in the hotel room, Defendant allegedly "pushed S.L. down on her knees and put his penis in her mouth," "pushed S.L. face down on to one of the beds, held her down with his body weight and penetrated her vagina with his penis," and, after she once freed herself, "grabbed her, pushed her on the bed, and penetrated her vagina with his penis again." *Id.* at 6.

### ii.     A.P.

A.P. began reporting to Defendant in August of 2017. *Id.* During their meetings, Defendant would speak inappropriately and touch her back and arm when he spoke to her. *Id.* In addition, Defendant allegedly showed up at A.P.'s workplace on at least two occasions. *Id.* A.P. claims she once failed a drug test, having had narcotics in her system, but Defendant said he would "do her a favor" and change the results to show marijuana use, a less serious violation. *Id.* After that,

Defendant would allegedly kiss A.P. and touch her buttocks. *Id.* A.P. claims she did not resist Defendant's advances for fear he would revoke her probation. *Id.*

On one occasion, Defendant allegedly told A.P. the Probation Office was closed and to meet him at a gas station instead. *Id.* at 7. There, Defendant got out of his car and into hers, then began kissing A.P. *Id.* A.P. feared that if she rebuked Defendant, he would "get her in trouble" or physically hurt her. *Id.* Defendant then allegedly "grabbed her hand and placed it on his groin, over his clothing, and A.P. could feel that his penis was erect." *Id.* In the days following this incident, Defendant instructed A.P. to meet him at a hotel. *Id.* She did not do so, and eventually Defendant revoked her probation and she was sent to jail. *Id.*

### iii.    B.P.

In 2017, B.P. was serving probation in another county for receiving stolen property but began reporting to Defendant when she moved to Bullitt County in June of that year. *Id.* During their meetings, Defendant "often turned their conversations to a sexual nature," and he would call B.P. even on his days off. *Id.* at 8. Defendant would also give B.P. "long hugs" and touch her buttocks at the end of meetings. *Id.* In addition, Defendant allegedly visited B.P.'s home four to five times, but B.P. never opened the door when she was alone. *Id.* Defendant would allegedly bang on her front door and bedroom window but never left a note, which B.P. knew was the proper protocol for an official home visit. *Id.*

### iv.    B.B.

B.B. began reporting to Defendant in November 2017. *Id.* Defendant allegedly began speaking inappropriately during their first meeting, telling B.B. she was beautiful, then hugged and rubbed his crotch against her during the next visit. *Id.* While conducting the first home visit to B.B.'s residence, Defendant allegedly told her that "[s]he was going to be his girlfriend for the

next eight months." *Id.* After this, B.B. had reason to believe Defendant may have been following her or otherwise inappropriately monitoring her activities. *Id.* at 9.

B.B. estimates that Defendant came to her residence at least three times and instructed her to go to a hotel with him. *Id.* B.B. lied to Defendant about why she could not go with him to get him to leave. *Id.* During one home visit, Defendant allegedly came to her residence around 11 p.m. smelling like alcohol. *Id.* Other people were at B.B.'s home at the time, so Defendant asked to speak privately in the bedroom. *Id.* Defendant then "kissed B.B., wrapped his arms around her, and grabbed her buttocks." *Id.* After this incident, B.B. stopped returning Defendant's calls. *Id.* During their next meeting, B.B. claims Defendant "appeared red-faced and angry." *Id.* Defendant apparently came to B.B.'s residence at least two more times, appearing angry and indicating that if she refused his demands, he could send her back to prison. *Id.* at 9–10.

### B. Other Alleged Crimes

During the same two-year period in 2017 and 2018, Defendant supervised six other female probationers, A.J., S.K., L.M., A.G.P., J.C., and E.M., who also allege sexual assault or misconduct by Defendant. Summaries of those alleged sexual assaults or misconduct follow.

### i. Uncharged Sexual Assaults (A.J. and S.K.)

A.J. began reporting to Defendant in January of 2018. *Id.* at 10. A.J. alleges that on multiple occasions, Defendant pushed her against the wall of his office, kissed her, and fondled her breasts and vagina over her clothes. *Id.* In addition, Defendant allegedly fondled her breasts during two home visits. *Id.* at 10–11.

The next probationer, S.K., began reporting to Defendant in March of 2017. *Id.* at 11. During their second meeting, Defendant allegedly told S.K. "he wanted to have sex with her after she was off probation," and that he believed "she would be a 'freak' and 'fun' in bed." *Id.*

Defendant then placed his hand down S.K.'s shirt, touched her breast, and tried to kiss her. *Id.* S.K. then allegedly observed Defendant "put his hand in his right pants pocket and touch himself." *Id.*

### ii. Other Bad Acts Alleged (L.M., A.G.P., J.C., and E.M.)

L.M. was under Defendant's supervision from August to September of 2018. *Id.* at 11–12. L.M. claims Defendant referred to her as "my hot mess" and "my ornament," told her that he was going to later inquire about her bra size, and once kissed her in his office. *Id.* at 12. Defendant apparently made L.M. so uncomfortable that she "decided to leave Kentucky and seek drug treatment in Ohio." *Id.* Upon relocating to Ohio, L.M. reported Defendant's behavior to her new drug counselor there. *Id.*

Another probationer, J.C., began reporting to Defendant in the summer of 2018. *Id.* at 13. Defendant allegedly began speaking to J.C. inappropriately during their first meeting. *Id.* At the end of the meeting, Defendant came around from behind his desk, gave J.C. a "very tight" hug, and told her "it's going to be okay." *Id.* Shortly thereafter, J.C. saw Defendant at Walmart, "where he started to wave his arms and scream her name," which frightened her. *Id.* During the February 15, 2023 hearing, the United States informed the Court that, like L.M., J.C. also reported Defendant's conduct to another probation officer. The United States explained that because J.C. had previously reported Defendant's conduct, the second report from L.M. prompted an investigation into Defendant and ultimately led to the charges in the Indictment.

The next probationer, A.G.P., began reporting to Defendant in June of 2017. *Id.* Defendant allegedly kissed and hugged her in his office, and their conversations "always ended up about sex, her sex life, whether she was dominant or submissive, and how often she had sex." *Id.* A.G.P. claims she "engaged him to stay on his good side." *Id.* Defendant once arrived at A.G.P.'s residence at approximately 9 p.m., but when he learned she was with her employer and his son, Defendant "left quickly and told A.G.P. to tell her boss and his son that [he] was just a friend." *Id.*

Lastly, Defendant supervised E.M. from December of 2017 through October of 2018. *Id.* During several office visits, Defendant made inappropriate remarks to E.M., telling her she was beautiful and inquiring about her sexual relations with her husband. *Id.* According to E.M., Defendant kept her in his office longer than necessary and concluded each visit with a hug. *Id.*

The United States intends to call these six uncharged victim-probationers at trial to help show that Defendant "used his position of authority over several of his probationers to coerce them into submitting to unwanted sexual contact" and had a pattern of "unnecessarily [making] frequent phone calls, sen[ding] text messages, and pa[ying] repeated visits to the female probationers' residences and workplaces, to proposition his female probationers for sex." [R. 22, p. 3]. The United States also seeks to use their testimony to corroborate the testimony of the victims identified in the Indictment.

## II.    Analysis

### A.  Rule 413

The United States seeks, first, to present testimony at trial from A.J. and S.K., two of Defendant's probationers in 2017 and 2018. According to the United States, A.J. will testify that Defendant "pushed [her] against the wall of his office, kissed her, and fondled her breasts and vagina over her clothes," that he "fondled her breasts during two home visits," and that she feared he would revoke her probation if she told him to stop.  [R. 22, pp. 10–11]. S.K. will testify that Defendant made inappropriate comments to her, including that "he wanted to have sex with her after she was off probation," and that he "put his hand down her shirt and touched her breast, "tried to kiss her," and "put his hand in his right pants pocket and touch[ed] himself." *Id.* at 11.

Defendant objects to the introduction of this evidence at trial, arguing that its prejudicial effect far outweighs its probative value and therefore fails the Rule 403 balancing test. [R. 23, p. 10]. Defendant makes no arguments concerning the first three factors the Court must consider

before admitting evidence under Rule 413, which will be discussed below.[2] Defendant does contend, however, that a jury would likely be confused by A.J. and S.K.'s testimony since the United States intends to offer the evidence under both Rule 413 and 404(b). *Id.* at 11.

> Federal Rule of Evidence 413 provides in relevant part:
>
> Permitted Uses. In a criminal case in which a defendant is accused of sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant.
>
> Disclosure to the Defendant. If the prosecutor intends to offer this evidence, the prosecutor must disclose it to the defendant, including witnesses' statements or a summary of the expected testimony. The prosecutor must do so at least 15 days before trial or at a later time that the court allows for good cause.

Fed. R. Evid. 413(a)–(b). "[E]vidence 'otherwise admissible under Rule 413 is still subject to Rule 403 balancing" and a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *United States v. Mandoka*, 869 F.3d 448, 453 (6th Cir. 2017); *see also United States v. Morris*, 494 Fed. Appx. 574, 584 (6th Cir. 2012).

Rule 413 favors admission because of the unique nature of sexual assault crimes. *See United States v. Sumner*, 119 F.3d 658, 662 (8th Cir. 1997) ("[T]he underlying legislative judgment is that [such evidence] is typically relevant and probative, and that its probative value is not normally outweighed by any risk of prejudice or other adverse effects."); *see also United States v. Stout*, 509 F.3d 796, 801–02 (6th Cir. 2007) ("Congress recognized that, in certain cases, sexual misconduct is different from other crimes. This difference is either that propensity evidence has special value in certain violent sexual misconduct cases or that the difficulty of and need for

---

[2] At the February 15, 2023 hearing, the Court sought confirmation from Defendant's counsel that his sole argument concerning the Rule 413 witnesses' testimony was that it fails the Rule 403 balancing test. Defendant's counsel confirmed that it was.

convictions for these crimes warrants a decrease in the usual protections against propensity and character evidence.").

As mentioned, three threshold requirements must be met before the Court can admit evidence under Rule 413: (1) the defendant must be accused of a crime involving sexual assault, (2) the evidence proffered must relate to the defendant's commission of another offense involving sexual assault, and (3) the evidence must be relevant. Fed. R. Evid. 413; *United States v. LaVictor*, 848 F.3d 428, 449 (6th Cir. 2017). The Sixth Circuit has held that evidence otherwise admissible under Rule 413 is still subject to a Rule 403 balancing test, allowing the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. *LaVictor*, 848 F.3d at 450; *United States v. Seymour*, 468 F.3d 378, 386 (6th Cir. 2006); *Morris*, 494 F. App'x at 584.

Here, Defendant has been charged with a crime involving sexual assault. *See* Fed. R. Evid. 413(a); *LaVictor*, 848 F.3d at 449.[3] Defendant does not dispute that this first element has been met. Second, the proposed evidence must be evidence of another sexual assault. As with the first factor, Defendant does not argue that the evidence offered does not pertain to other sexual assaults. The allegations made by A.J.—that Defendant's touched her breasts and vagina over her clothing— and those made by S.K.—that Defendant similarly touched her breasts while also touching his penis—would constitute sexual conduct under § 2246(3) if proven. Further, Defendant does not argue there is insufficient evidence that these assaults occurred such that the evidence should be

---

[3] Rule 413 defines "sexual assault" to include conduct criminalized under Chapter 109A of Title 18, and to include "sexual contact" prohibited by 18 U.S.C. § 2244(a)(2), which involves "the intentional touching, either directly or through the clothing, of the . . . breast, inner thigh, or buttocks of any person with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3). The allegations in Counts One through Six constitute sexual assault as defined by Rule 413. Defendant is charged with violating 18 U.S.C. § 242, which criminalizes "the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 18 U.S.C. § 242. The charges stem from the alleged sexual assaults of four women. It is well settled that "[i]f the 'right to bodily integrity' means anything, it certainly encompasses the right not to be sexually assaulted under color of law." *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 507 (6th Cir. 1996).

excluded for that reason. The United States plans to offer the testimony of these women to prove the assaults occurred. The Court will preliminarily find this evidence is sufficient to do so.[4] The second admissibility requirement under Rule 413 is therefore met.[5]

Third, the evidence must be relevant.[6] Rule 413(a) permits the government to admit evidence of a defendant's prior sexual assaults as propensity evidence "on any matter to which [the assaults are] relevant." *Id.* (citing Fed. R. Evid. 413(a)). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "When applying Rule 413, evidence of prior assaults is relevant when '[t]he facts of the previous sexual assaults' are similar to the charged offense." *Mandoka*, 869 F.3d at 453–54 (citing *LaVictor*, 848 F.3d at 450). Factors courts consider before admitting evidence under Rule 413 include: "(1) the 'close[ness] . . . in time' of the prior acts to the current charges, (2) the 'similarity of the prior acts,' and (3) the 'alleged frequency' of the prior acts." *Seymour*, 468 F.3d at 385–86.

The Court finds that the alleged assaults the United States intends to produce here are similar enough to pass the "very low" threshold for relevance. *See, e.g.*, *United States v. Whittington*, 455 F.3d 736, 739 (6th Cir. 2006) (noting that "the relevance threshold is very low under Rule 401"). On the first factor, closeness in time, all of the events at issue took place in the same two-year period between 2017 and 2018. *See generally* [R. 22, pp. 4–13]. As for similarity, all of the assaults alleged involve the Defendant inappropriately touching his female

---

[4] "[A] district court must determine that a reasonable jury could find by a preponderance of the evidence that these acts were sexual assaults committed by the defendant." *LaVictor*, 848 F.3d at 449 (citing *United States v. Dillon*, 532 F.3d 379, 391 (5th Cir. 2008); *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998)). "[T]he testimony of the witnesses need not be explicitly corroborated" for the Court to make that finding. *Id.* (citing *Dillon*, 532 F.3d at 391).

[5] Should Defendant later challenge the reliability of the government's evidence, Defendant may request a hearing prior to trial so the Court may make this preliminary finding.

[6] During the second hearing held February 15, 2023, Defendant's counsel conceded the relevance factor as well, arguing only that the evidence is unfairly prejudicial.

probationers—ranging from kisses and fondling to forcible rape. Several of the alleged assaults, including those on A.J. and S.K., allegedly occurred in Defendant's office, at the probationers' homes during home visits, or in a private place Defendant asked the probationer to meet him, usually the parking lot of a gas station or motel. The probationers' accounts are remarkably similar, all demonstrating an escalation in behavior that begins with inappropriate or sexually charged comments in Defendant's office early on in the supervisory term. As for the third factor, frequency, the alleged incidents are also similar in that manner—several women allege that Defendant began calling and/or presenting at their workplaces habitually, in a manner that seemed to them beyond the call of duty.

Defendant argues that "part of [his] job responsibilities was to conduct home visits, sometimes unannounced, and to require mandatory office visits" which "may have provided the reason [he] was in contact with the offenders, but they would have been required in the ordinary course of business." [R. 23, p. 8]. But this defense underscores the probative nature of the proffered evidence. Whether Defendant's defense is that he was merely being an attentive probation officer, that the alleged victims consented to the sexual encounters, or that the encounters never occurred, the proffered evidence is plainly relevant. The allegations of A.J. and S.K. make it more probable that Defendant committed similar abusive acts against the probationers he is charged with assaulting in the indictment, and their testimony would serve to corroborate the charged victims' accounts. The evidence is therefore relevant to Defendant's guilt of those offenses, particularly since his defense appears to be that some or all of the alleged victims are fabricating their stories.

Having found that the testimony of A.J. and S.K. is relevant and probative to the offenses charged in the indictment, the Court must next determine if that is outweighed by the risk of unfair prejudice under Rule 403. Evidence Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the

following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid 403. The Sixth Circuit has "recognize[d] that Rule 413 evidence can be inherently prejudicial. By describing violent and sexual conduct, the evidence may have a strong propensity to evoke a visceral reaction from a lay jury." *LaVictor*, 848 F.3d at 450. But the Court explained that "Congress's decision to codify Rule 413 reflects its belief of the probative nature of such testimony" and "represent[s] an understanding that sexual assault is different from regular prior bad acts." *Id.* "This difference is either that propensity evidence has special value in certain violent sexual misconduct cases or that the difficulty of and need for convictions for these crimes warrants a decrease in the usual protections against propensity and character evidence." *Id.* (internal citation and quotation marks omitted).

The Sixth Circuit further noted that evidence of other sexual misconduct is "especially important" in cases where a defendant argues the victim consented to sexual contact, *see id.*, a defense which Defendant has not raised here, as he points out in his objection. *See* [R. 23, p. 8] ("The defendant, in his statements to authorities, has not raised the defense of consent, having denied a sexual relationship with S.L."). But Defendant's fervent denial of any sexual misconduct highlights another reason corroborating testimony, like that by A.J. and S.K., is especially important in sexual assault cases—the fact that no witnesses but the defendant and the alleged victim can recount the sexual contact. *See United States v. Guardia*, 135 F.3d 1326, 1330 (10th Cir. 1998) ("[P]ropensity evidence has a unique probative value in sexual assault trials and that such trials often suffer from a lack of any relevant evidence beyond the testimony of the alleged victim and the defendant."); *see also United States v. Miller*, No. 3:20-CR-58-KAC-HBG, 2021 WL 3854784, at *4 (E.D. Tenn. Aug. 27, 2021) ("[T]he Court finds evidence of a prior sexual assault . . . is especially probative in this case in which Defendant challenges the victim's credibility.").

12

Moreover, while the proffered evidence is certainly prejudicial by its inculpatory nature, it is not unduly so. *Mandoka*, 869 F.3d at 456. The Court agrees with the United States that because the other sexual assaults alleged are factually and circumstantially similar to those charged in Counts One through Six of the Indictment (other than the final allegation of rape in Count One), and because the most egregious conduct is alleged in Count One (rape), the evidence the United States seeks to present is not at risk of being more inflammatory than the charged crimes. *See id.* at 453 (noting courts may exclude otherwise relevant Rule 413 evidence if it fails Rule 403 balancing); *see also United States v. Gabe*, 237 F.3d 954, 960 (8th Cir. 2001) ("Because the evidence [of prior abuse] was so similar to [one of] the acts charged, it would not be so facially inflammatory as to unduly divert attention from the issues of the case.").

Still, Defendant notes that the risk of unfair prejudice does not stem from the inflammatory nature of the other evidence the United States intends to offer, but from the risk the jury would convict him because they find him "unlikable, and a bad person who, as a result of this characterization, is more likely to have committed this offense[.]" [R. 23, p. 9]. This position is unavailing for multiple reasons. To the extent Defendant argues propensity evidence is improper under these circumstances, that argument is misplaced. Congress has explicitly recognized "that propensity evidence has special value in certain violent sexual misconduct cases . . . [which] warrants a decrease in the usual protections against propensity and character evidence." *LaVictor*, 848 F.3d at 450 (internal citation and quotation marks omitted). By codifying Rule 413, Congress "created exceptions to the general restriction of Rule 404(b), permitting the admission of similar prior bad act evidence in sexual assault . . . cases *to show the propensity of the defendant to commit the crime charged*." *Stout*, 509 F.3d at 801 (emphasis added). Thus, while the Court recognizes the jury may consider the testimony of A.J. and S.K. and believe, based on their accounts, that Defendant was more likely to have committed the offenses charged in the Indictment, that is a

13

legitimate purpose Congress explicitly recognized when it implemented Rule 413. The Court does not, therefore, find that use of the proposed testimony for this purpose—deemed proper by Congress and endorsed by the Sixth Circuit—would be unfairly prejudicial. Further, Defendant's attempt to discredit the probity of the evidence by arguing it simply paints him as "unlikeable" or a "bad person" fails. For the reasons previously articulated, this evidence is highly probative and relevant to the issues central to this case.

Moreover, the Sixth Circuit has determined that limiting instructions can sufficiently address the risks Defendant points to and ensure his case is not unfairly prejudiced. *See Morris*, 494 F. App'x at 583 (finding district court properly admitted evidence of prior sexual assaults under Rule 413 because evidence was probative, not unfairly prejudicial, and any jury confusion could be cured by a limiting instruction); *see also Mandoka*, 869 F.3d 448, 454 (same). In *United States v. Morris*, 494 F. App'x 574 (6th Cir. 2012), the Sixth Circuit found that a district court did not abuse its discretion in admitting evidence of prior sexual assaults under Rule 413 under similar facts as here. In *Morris*, the defendant was convicted of two counts of depriving the constitutional rights of another in violation of 18 U.S.C. § 242, and one count of willfully making a false statement to the FBI during the course of the investigation in violation of 18 U.S.C. § 1001. The conviction arose out of the sexual abuse of two women by the defendant, a former Hamblen County Deputy Sheriff, during routine traffic stops that led to the rape of one woman and the strip search of another. At trial, the district court allowed testimony from another woman, RL, who was incarcerated in the Hamblen County Jail. The testimony provided:

> RL had blood sugar level problems that required her to be escorted to the kitchen for a snack during the night. In August of 2003, Morris, who was then working at the jail, took over the duties of escorting RL for her night snack. One night, while escorting RL, Morris made a comment about her breasts and asked RL to show them to him. RL complied. The very next night, RL testified that Morris approached her from behind, made another comment about her breasts, and reached down the back of her pants and put his finger inside RL. RL asked Morris to stop, which he

> did, and Morris told RL not to tell anybody because he could make things hard for
> her in jail. On a different night in the kitchen, Morris pulled out his penis and asked
> RL to perform oral sex, which she briefly did. She testified that "we didn't go all
> the way."

*Id.* at 583 (cleaned up).

The district court found that this evidence was probative and not unfairly prejudicial, and that any jury confusion could be cured by a limiting instruction, and the Sixth Circuit agreed. *Id.* The same is true here. Defendant points to no facts that distinguish this case from others involving sexual assault where courts have found similar evidence not unfairly prejudicial. And he does not make a convincing argument that the jury would be unable to consider the evidence for a relevant purpose. In another similar case, *United States v. Mandoka*, 869 F.3d 448 (6th Cir. 2017), the Sixth Circuit affirmed a district court's admission of evidence of other sexual assaults under Rule 413, rejecting the defendant's argument that the prior sexual assaults were too dissimilar from the ones at issue, and therefore not relevant. The court opined:

> When applying Rule 413, evidence of prior assaults is relevant when "[t]he facts of
> the previous sexual assaults" are similar to the charged offense. . . . The assaults in
> this case were more than similar enough to pass this "very low" threshold for
> relevance. . . . All three assaults involved Defendant fondling the genitals of three
> of his female family members—his daughter and his two nieces—each of whom
> were roughly the same age at the time of their respective assaults. J.G.'s abuse
> allegations made it more probable that Defendant committed similar abusive acts
> against J.G.'s sister and cousin, and thus this evidence was relevant to Defendant's
> guilt of the offenses charged in the indictment.

*Id.* at 453–54 (cleaned up).

Likewise here, the alleged assaults all involve similar facts and circumstances and similar victims. The victims, all probationers, each allege that Defendant inappropriately spoke to, touched, or otherwise contacted them. As previously mentioned, many of the alleged assaults occurred in the same or similar locations—in the Defendant's office or in a more private place Defendant asked the probationer to meet him. The accounts of A.J. and S.K. are similar enough to

the charged crimes to pass the low threshold of relevance, and their prejudicial effect does not outweigh their probative value.[7]

Lastly, Defendant's argument that the jury will be confused by the United States' introduction of this testimony under both Rule 413 and Rule 404(b) appears to misunderstand the United States' intent. Under Rule 413, the United States may present the testimony of A.J. and S.K. for any purpose, including propensity. Accordingly, if the Court allows the testimony under Rule 413, the United States need not also introduce it under Rule 404(b). The Court presumes that the United States sought to introduce the testimony of A.J. and S.K. under Rule 404(b) as an alternative to Rule 413, in the event the Court did not find it admissible under that Rule. To be clear, the testimony will be admitted under Rule 413. In any case, as will be discussed below, the Court will exclude the evidence the United States seeks to offer under Rule 404(b), eliminating the risk that the jury would confuse the Rule 413 and Rule 404(b) standards.

Along those lines, the Court agrees with the United States that evidence of the other alleged sexual assaults will not be so complex, confusing, or prejudicial that it would distract the jury from the central issues or become overly time-consuming. The United States submits that "[p]roof of each act will be limited to the testimony of the female who endured it, and, with respect to S.K., evidence of initial disclosure, offered to rebut any defense claim of recent fabrication." [R. 22, pp. 19–20] (citing Fed. R. Evid. 801(d)(1)(B)(i) (noting a statement is admissible as non-hearsay if the declarant testifies, is subject to cross examination and the prior statement is "consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying")). While

---

[7] In his Objection to the United States' Notice, Defendant argues generally that all testimony proffered by the United States is unfairly prejudicial and fails Rule 403's balancing test. *See* [R. 23, pp. 9–12]. He does not specifically argue that any of the alleged victims' testimony is more prejudicial than others or distinguish between the testimony offered pursuant to Rule 413 and Rule 404(b).

the Court understands Defendant will need to take time to cross-examine the witnesses and "refute [their] allegations with proof of his own," [R. 23, p. 13], the Court is not convinced that this would lead to "a long, distracting, and confusing set of trials within a trial," as Defendant suggests, *id.* at 12. Again, this is particularly true since the Court will exclude the witnesses the United States seeks to present under Rule 404(b) to avoid undue delay, prejudice, and the unnecessary presentation of cumulative evidence.

In sum, the Court finds that the testimony of A.J. and S.K. is admissible and the jury may consider it "on any matter which it is relevant," including to demonstrate Defendant's motive, plan, and pattern of behavior. Fed. R. Evid. 413. As outlined above, these are issues on which the proposed testimony is both relevant and highly probative. It is not unduly prejudicial, and any potential jury confusion can be cured by a limiting instruction.

### B. Rule 404(b)

The United States seeks to offer testimony from four other probationers under Defendant's supervision in 2017 and 2018, L.M., A.G.P., J.C., and E.M., under Rule 404(b) to show Defendant's motive, intent, preparation, and plan. [R. 22, p. 11]. The United States explains that the acts alleged by these probationers do not involve sexual assault, so, unlike A.J. and S.K.'s testimony, theirs cannot be introduced under Rule 413. *Id.*

The first probationer, L.M., would testify that Defendant made inappropriate comments to and about her in front of others, kissed her once during an office visit, and made her so uncomfortable that she left Kentucky to seek drug treatment in Ohio. *Id.* at 12. The next probationer, A.G.P., would testify that Defendant "kissed and hugged her in his office," and that she submitted to this for fear he would revoke her probation. *Id.* She would also testify that when Defendant would call her, the conversation would "always" become sexual in nature. *Id.* In addition, A.G.P. would testify that on one occasion, Defendant came to her house for a home visit

17

around 9 p.m. but quickly left when he realized she was not alone and advised A.G.P to tell the individuals at home with her that Defendant "was just a friend." *Id.*

Next, the United States seeks to call J.C., who would testify to inappropriate sexual conversations with Defendant, one meeting where Defendant "gave her a very tight hug," and an encounter at Walmart shortly after that meeting that made J.C. uncomfortable. *Id.* at 13. Lastly, E.M. would testify that Defendant made inappropriate sexual comments to her, "kept her in his office longer than he needed," and hugged her at the end of each office visit. *Id.* at 13–14.

As with the testimony of A.J. and S.K., Defendant suggests the testimony of L.M., A.G.P., J.C., and E.M. would be unduly prejudicial and should be excluded. [R. 23, p. 9]. Defendant also argues this evidence is not being offered for a permissible purpose, as he contends the evidence is not probative of motive, intent, or plan. *Id.* at 6–12. Moreover, Defendant suggests that the introduction of this testimony would cause undue delay because "[e]ach prior incident could require lengthy questioning where the jury will be called upon to not only decide this matter but try the factual allegations of the previous incidents as well." *Id.* at 12.[8]

Federal Rule of Evidence 404(b) provides as follows:

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

---

[8] Without citing any legal authority, Defendant has also asserted that the probationers' testimony "directly and unfairly affects [his] Fifth Amendment right not to testify." [R. 23, p. 13]. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (internal citation and quotation marks omitted). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Id.* Moreover, when the Court asked Defendant's counsel to elaborate on this point at the hearing, counsel explained that his position was based more on strategy and intuition than in law. Accordingly, the Court will not address the merits of this argument and deems it waived.

(A) provide reasonable notice[9] of the general nature of any such evidence that the prosecutor intends to offer at trial; and

(B) do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice. Prior acts of sexual assault can be admitted under Rule 404(b).

Fed. R. Evid. 404(b).

The Sixth Circuit has outlined a three-step process a district court should undertake to determine whether to admit evidence of prior bad acts under Rule 404(b):

First, the district court must make a preliminary determination regarding whether there is sufficient evidence that the "other acts" took place. The district court must then determine whether those "other acts" are admissible for a proper purpose under Rule 404(b). Finally, the district court must determine whether the "other acts" evidence is more prejudicial than probative.

*United States v. Bell*, 516 F.3d 432, 440–41 (6th Cir. 2008) (citing *United States v. Lattner*, 385 F.3d 947, 955 (6th Cir. 2004)); *see also United States v. Jenkins*, 345 F.3d 928, 927 (6th Cir. 2003) (citing Fed. R. Evid. 403; *United States v. Haywood*, 280 F.3d 715, 723 (6th Cir. 2002) ("'Probative 'other acts' evidence is nevertheless inadmissible if the value of the evidence is substantially outweighed by its potential prejudicial effect.'").

The Sixth Circuit has made clear that Rule 404(b) "is a rule of inclusion, not exclusion." *United States v. Myers*, 102 F.3d 227, 235 (6th Cir. 1996) (citing *United States v. Bakke*, 942 F.2d 977, 981 (6th Cir. 1991); *United States v. Vance*, 871 F.2d 572, 575 (6th Cir. 1989), cert. denied, 493 U.S. 933 (1990)). The Court has broad discretion in admitting evidence under Rule 404(b). *United States v. Acosta-Cazares*, 878 F.2d 945, 948–51 (6th Cir. 1989), cert. denied, 493 U.S. 899 (1989).

### i.   Rule 404 Admissibility Factors

---

[9] Defendant has acknowledged that "[t]he government has given sufficient notice with its filing[.]" [R. 23, p. 6].

Regarding the first *Bell* factor, Defendant does not contest that the United States has presented sufficient evidence to prove the prior bad acts occurred, and for good reason. Evidence is sufficient for the purposes of 404(b) "if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Bell*, 516 F.3d at 441 (citing *Huddleston v. United States*, 485 U.S. 681, 689 (1998)); *see also United States v. Bonds*, 12 F.3d 540, 572 (6th Cir. 1993) (finding that testimony from a single eyewitness "amply support[ed]" a finding that the other act occurred). Here, L.M., A.G.P., J.C., and E.M. would each testify to their individual, yet factually similar, accounts of Defendant's inappropriate behavior toward them. This satisfies the Court's first preliminary determination that there is sufficient evidence the "other acts" took place. *Bell*, 516 F.3d at 440–41.

Next, the parties dispute whether the evidence the United States seeks to introduce is for a proper purpose—that is, whether it is probative of Defendant's motive, intent, and preparation or plan, each of which is included in Rule 404's non-exhaustive list of proper purposes. *See* Fed. R. Evid. 404(b)(2). "To determine whether the proffered evidence is admissible for a proper purpose, the trial court must decide 'whether that evidence is probative of a material issue other than character.'" *United States v. Carney*, 387 F.3d 436, 451 (6th Cir. 2004) (quoting *Huddleston*, 485 U.S. at 686). "This requires a three[-]part inquiry." *Bell*, 516 F.3d at 441. "Evidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *United States v. Rayborn*, 495 F.3d 328, 342 (6th Cir. 2007) (quoting *United States v, Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003)).

First addressing motive,[10] Defendant suggests, "[i]t is hard to imagine how motive can possibly be an issue in this case" given the "completely obvious" motivation of sexual gratification "for anyone committing this offense." [R. 23, p. 7]. The United States counters that "many (hopefully most) people would not derive sexual gratification from [] nonconsensual sex" and that, if Defendant sought only sexual gratification, "he could have gotten that from his wife, or from the two women, who were not probationers, who told law enforcement they were having affairs with [him]." [R. 24, p. 2]. According to the United States, the 404(b) evidence shows Defendant's true motive of "using his position to cause female probationers to submit to sexual harassment and sexual assaults" from which he "derived pleasure." *Id.* Another motive suggested by the United States is "to determine how far each female probationer would allow him to go in his harassment based on fear of his authority." *Id.*

The Court agrees with the United States, first, that sexual gratification is not the only "obvious motive," as Defendant suggests, for committing the acts alleged in this case. The Court further finds that the issue of motive is material, or "in issue," because it could help the jury determine whether the Defendant is the perpetrator of the crimes alleged. Because he claims the assaults did not occur, evidence showing that Defendant, as a probation officer, had a specific, power-driven motivation for preying on women could tend to prove (or disprove, if the jury is unconvinced of the United States' theory) a fact in issue—that Defendant was indeed the individual who perpetrated these crimes. The second proper purpose requirement is therefore met.

The third prong requires that the evidence offered be probative of the proper purpose for which it is offered. *Rayborn*, 495 F.3d at 342. On this point, the Court notes that the testimony the United States seeks to elicit from L.M., A.G.P., J.C., and E.M. is only minimally probative of the

---

[10] "Motive" is explicitly mentioned as an admissible purpose in Rule 404(b)(2), satisfying the first prong of the proper purpose inquiry.

motives the United States points to—using power, dominance, and fear in order to ensure submission—because the testimony of the victims named in the Indictment and that of A.J. and S.K. likewise demonstrate those motives. In other words, because the United States has significant, independently admissible evidence that would demonstrate motive, the probative value of the proffered testimony is low. Nevertheless, because the evidence is somewhat probative, the third proper purpose prong is met.

On the next proper purpose, intent,[11] the United States argues the proffered testimony is admissible to prove the specific intent elements of the crimes charged. [R. 22, p. 22 (citing *Huddleston*, 485 U.S. at 685) ("Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.")]. The Sixth Circuit has recognized that "when the crime charged requires proof of specific intent, the prosecutor may use the prior bad acts to prove that intent 'notwithstanding any defense the defendant might raise.'" *United States v. Love*, 254 F. App'x 511, 515 (6th Cir. 2007), aff'd, 550 F. App'x 286 (6th Cir. 2014) (citing *United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994)). Along those lines, the Sixth Circuit has found that "when a defendant pleads not guilty, it triggers the government's duty to prove his specific intent beyond a reasonable doubt, even if the defense raised centers on another element of the offense." *United States v. Lattner*, 385 F.3d 947, 957 (6th Cir. 2004). Because intent is an element of the charged offenses, and because the United States could use the evidence of Defendant's behavior on prior occasions to demonstrate his intent to commit the crimes charged, the second and third proper purpose prongs are met. [12]

---

[11] "Intent" is another purpose explicitly mentioned in the list of admissible purposes under Rule 404(b)(2), again satisfying the first prong of the proper purpose inquiry.

[12] At the first hearing held December 15, 2022, Defendant offered to stipulate to intent as to Count One if the jury found that he committed the charged offense, hoping to eliminate the United States' need to call the Rule 404(b) witnesses. The defendant made a similar offer to stipulate in *United States v. Asher*, 910 F.3d 854 (6th Cir. 2018),

Lastly, the United States seeks to use the proffered testimony to show Defendant's plan, preparation, modus operandi, and/or the methodology he used to accomplish the alleged crimes, all proper uses under 404(b).[13] "A prior bad act is admissible as evidence of plan or preparation when it can be shown that the two instances are a part of the same scheme or plot." *United States v. Westine*, No. CRIM. 14-10-GFVT, 2015 WL 45515, at *5 (E.D. Ky. Jan. 2, 2015), aff'd sub nom., *United States v. Ramer*, 883 F.3d 659 (6th Cir. 2018)*; see also Bell*, 516 F.3d at 443 (counting cases) (noting prior bad act evidence may only be probative when the prior acts "were part of the same scheme or involved a similar modus operandi as the present offense").

Importantly, the United States does not seek to introduce prior similar, yet unrelated bad acts to demonstrate Defendant's preparation for the assaults charged in the Indictment. Rather, the United States attempts to show that the assaults on the victims named in the indictment and the six other purported witnesses were "a part of the same scheme or plot" to prey on probationers. *Id.* Moreover, the United States attempts to demonstrate, through the commonality of the probationers' accounts, that the assaults at issue involved a similar modus operandi. Making this showing would tend to corroborate the alleged victims' accounts, which the Defendant contests. The second prong of the proper purpose analysis is therefore satisfied, since the central issue of whether the assaults actually occurred is a material one the United States must prove beyond a reasonable doubt.

---

which the United States brought to the Court's attention during the hearing but sought to distinguish its holding. Since the offer to stipulate and *Asher* were both raised for the first time at the hearing, the Court ordered additional briefing on the issues. [R. 26]. However, because the Court now finds that admitting the Rule 404(b) witnesses' testimony would be unfairly prejudicial under Rule 403, *see infra* Section II.B(ii), it need not consider *Asher* nor Defendant's offer to conditionally stipulate. Defendant argues the stipulation "would render the 404(b) evidence unnecessary." [R. 31, p. 7]. The Court's exclusion of the Rule 404(b) witnesses renders Defendant's offer to stipulate moot. The Court notes, however, that the offer to stipulate has no impact on the admissibility of the Rule 413 witnesses, which can be admitted for any relevant purpose.

[13] "Preparation" and "plan" are two other purposes mentioned in Rule 404(b)(2) as admissible purposes.

The United States offers that Defendant "used every tool available to him as a probation officer to mistreat, abuse, and, in some instances, assault the female probationers whom he supervised" and testimony from L.M., A.G.P., J.C., and E.M would "reveal[] how the defendant systematically used mandatory office visits as opportunities to comment about the probationers' appearance, inquire about their sexual activity, and make sexual and physical advances, rather than monitor their progress and recovery." [R. 22, p. 24]. Defendant counters that "[t]here is no proof that there was no legitimate business conducted at these meetings" and that "the alleged inappropriate conversations and hugs are meant to present his character as boorish, sexist, or misogynistic rather than to further any plan to sexually assault women." [R. 23, p. 9]. The Court disagrees. Whether or not the jury believes that Defendant "made pretextual home and workplace visits to abuse the women, knowing that as a probation officer, he was allowed and expected to show up unannounced," as the United States suggests, [R. 22, p. 24], the testimony from L.M., A.G.P., J.C., and E.M. could tend to prove that position. And the commonality of the probationers' accounts of their dealings with Defendant could certainly demonstrate, as the United States proposes, "a scheme to coerce female probationers into submitting to his sexual advances." *Id.* This satisfies the third proper purpose prong, that the proffered evidence be probative of the purpose for which it is offered.

### ii.    Rule 403 Balancing

However relevant and even when offered for a proper purpose, the Court must still employ Rule 403's balancing test to determine if the probative value of the testimony is substantially outweighed by the risk of unfair prejudice. As previously stated, Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Defendant

acknowledges that "probative evidence that is produced against him by the government is by its very nature prejudicial." [R. 23, p. 10]. Indeed, "relevant evidence of a crime which the government must introduce to prove its case is by its nature detrimental to a defendant who asserts that he is not guilty of the charged offense." *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001). Defendant fears not that the evidence will be so inflammatory or egregious to appeal to the jury's emotions, but rather that the jury will generalize his earlier bad act "as raising the odds that he did the latter bad act now charged." [R. 23, pp. 10–11 (quoting *Old Chief v. United States*, 519 U.S. 172, 180–81 (1997))].

The Court agrees with the United States that because "the 404(b) evidence involves allegations that are less serious than the allegations in Counts 1 through 6 of the Indictment," [R. 24, p. 5], the risk of undue prejudice due to the inflammatory nature of the evidence is low. The Sixth Circuit has found low risk of undue prejudice where the proposed prior-bad-act evidence has less "inflammatory potential" than the evidence presented as part of the government's case in chief. *See Mandoka*, 869 F.3d at 459 ("The testimony relating to Defendant's abuse of [his spouse] was not extensive, graphic, or detailed, and we find it unlikely that the testimony could have inflamed the jurors' passions and motivated them to convict on an improper basis, particularly since the child sexual abuse evidence that the government presented during its case in chief had far greater inflammatory potential than the spousal abuse evidence."). The Rule 404(b) testimony the United States seeks to present is not more inflammatory than the testimony that will be presented by any of the women identified in the indictment, nor is it more inflammatory than the testimony the Court has already determined is admissible under Rule 413.

Notwithstanding, the Court will exclude the testimony the United States seeks to elicit from L.M., A.G.P., J.C., and E.M. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by . . . needless presentation of cumulative evidence." Fed. R. Evid.

403. The Sixth Circuit has explained that evidence is "cumulative" when "it adds very little to the probative force of the other evidence in the case, so that if it were admitted its contribution to the determination of truth would be outweighed by its contribution to the length of the trial, with all the potential for confusion, as well as prejudice to other litigants, who must wait longer for their trial, that a long trial creates." *United States v. Love*, 254 F. App'x 511, 518 (6th Cir. 2007), aff'd, 550 F. App'x 286 (6th Cir. 2014) (citing *United States v. Williams*, 81 F.3d 1434, 1443 (7th Cir. 1996)).

L.M., A.G.P., J.C., and E.M. all make allegations consistent with the others in this case, but their testimony would be largely duplicative of the other testimony proffered by the United States. First, L.M. would testify that Defendant made inappropriate comments to and about her in front of others, kissed her once during an office visit, and made her so uncomfortable that she left Kentucky to seek drug treatment in Ohio. [R. 22, p. 12]. A.G.P. would testify that Defendant "kissed and hugged her in his office," that their conversations would "always" become sexual in nature, and that Defendant once came for a home visit but left when he realized she was not alone. *Id.* at 13. J.C. would testify to inappropriate sexual conversations with Defendant, one meeting where Defendant "gave her a very tight hug," and an encounter at Walmart shortly after that meeting that made J.C. uncomfortable. *Id.* E.M. would testify that Defendant made inappropriate sexual comments to her, "kept her in his office longer than he needed," and hugged her at the end of each office visit. *Id.*

L.M. and A.G.P.'s testimony, while consistent with the allegations made by other alleged victims in this case, adds little independent probative value that cannot be gleaned from A.J. or S.K.'s testimony, or from that of the victims named in the Indictment. Further, neither J.C. nor E.M. would testify to any inappropriate touching beyond hugging. While Defendant's behavior toward them, if true, was unacceptable and inappropriate, the risk of unfair prejudice that comes

from piling on allegations of misconduct outweighs the minimal probative value their testimony would provide. If the Court were to allow L.M., A.G.P., J.C., and E.M. to testify, in addition to A.J. and S.K., there would be more uncharged victims participating at Defendant's trial than those named in the Indictment. The Court is concerned that, were that the case, the sheer number of alleged victims could have a prejudicial effect on Defendant.

Along those lines, this is not the type of he-said-she-said case where the jury must choose to believe the story of a single victim named in an indictment over the alleged perpetrator's version of events. In such cases, the probative value of Rule 404(b) witnesses is often greater. But where, as here, there are multiple victims named in the indictment, the jury will be tasked with weighing four similar stories against the Defendant's, even before considering the testimony of the Rule 413 victims. The Court will therefore exclude the testimony of L.M., A.G.P., J.C., and E.M as unfairly prejudicial under Rule 403, potentially causing undue delay, wasting time, and needlessly presenting cumulative evidence.

### C.  *Res Gestae*

Lastly, the Court considers the admissibility of evidence concerning J.C. and L.M. as *res gestae*. On this issue, the Court ordered supplemental briefing. [R. 26]. The United States argues testimony concerning both alleged victims is admissible as *res gestae* because their complaints triggered the investigation into Defendant and ultimately led to the charges in the Indictment. [R. 30, p. 1]. The United States requests that investigators be permitted to testify about their receipt of those complaints and the investigation that ensued. *Id.* Defendant argues testimony concerning the complaints is not relevant to the charges in the Indictment, because the jury is not charged with "making a finding regarding the practices and procedures employed by the investigators." [R. 31,

27

p. 3]. Moreover, Defendant suggests that *res gestae* evidence must be inextricably intertwined with the events at issue in the Indictment, and L.M. and J.C.'s[14] internal complaints are not so.

"Res gestae is sometimes also known as 'intrinsic evidence.'" *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015). "Intrinsic acts are those that are inextricably intertwined with the criminal act charged or a part of the criminal activity as opposed to extrinsic acts, which are those that occurred at different times and under different circumstances from the offense charged." *United States v. Stafford*, 198 F.3d 248, *4 (6th Cir. 1999). The Sixth Circuit "allow[s] the trial court to admit evidence regarding a defendant's unindicted criminal activity when that activity is 'intrinsic' or 'inextricably intertwined' with charges named in the indictment." *United States v. Potts*, 173 F.3d 430, *9 (6th Cir. 1999). Importantly, *res gestae* evidence "does not implicate Federal Rule of Evidence 404(b), which generally bars evidence of past acts to prove character, but with some exceptions." *Churn*, 800 F.3d at 779 (citing *U.S. v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)). However, even if evidence is *res gestae*, the Court "must also find that . . . the evidence [is] not substantially outweighed by the danger of unfair prejudice pursuant to Federal Rule of Evidence 403." *United States v. Joseph*, 270 Fed. Appx. 399, 406 (6th Cir. 2008) (per curiam).

Having considered the parties' supplemental briefs and oral argument on this issue, the Court reserves ruling on the admissibility of testimony concerning L.M. and J.C. On one hand, because J.C. and L.M.'s reports led to the internal investigation into Defendant and, consequently, to the charges in the Indictment, the Court believes testimony concerning their complaints could be admissible *res gestae* evidence. On the other, the Court is concerned with the potential prejudice that could stem from informing the jury of complaints raised from two more probationers,

---

[14] When the Court ordered additional briefing on the issue of *res gestae*, the Court (and presumably Defendant) was only aware of the potential *res gestae* status of L.M.'s testimony. The United States indicated for the first time in its supplemental brief that J.C. also lodged complaints that ultimately led to the investigation into Defendant. *See* [R. 30, p. 1]. Thus, although Defendant does not directly address the *res gestae* status of testimony concerning J.C., the Court presumes his arguments likewise apply to it.

28

indicating additional misconduct in addition to that alleged by the four victims named in the Indictment and A.J. and S.K.

The Court will reserve ruling on the admissibility of testimony concerning L.M. and J.C.'s complaints closer to trial, when the Court will have more context to evaluate its admissibility.

## III.    ORDER

Based on the foregoing, it is **HEREBY ORDERED** as follows:

1. The United States is **PERMITTED** to introduce the following evidence noticed at [**R. 22**]:

    a.  Testimony from and evidence related to A.J. and S.K. as evidence of prior sexual assaults under FRE 413. The United States may use this evidence for any proper purpose.

2. The United States is **PROHIBITED** from introducing the following evidence noticed at [**R. 22**]:

    a.  Testimony from or evidence related to L.M., A.G.P., J.C., and E.M. as evidence of prior bad acts under FRE 404(b).

3. The Court denies without prejudice the United States' request to introduce *res gestae* testimony concerning L.M. and J.C.

This the 22nd day of February, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY